[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 21, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-15516

_____

D. C. Docket No. 02-20556-CV-JLK

NATIONAL ADVERTISING CO., a Delaware corporation,

Plaintiff-Appellant,

versus

CITY OF MIAMI, a Florida municipality,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(MARCH 21, 2005)

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and RESTANI*,
Judge.

PER CURIAM:

_____

* Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by
designation.

In this case, we decide whether a billboard company's challenge to a City's sign permitting procedure is ripe for judicial review. Plaintiff-Appellant, National Advertising Company ("National") appeals the district court's order granting final summary judgment in favor of Defendant-Appellee, the City of Miami. National, claiming that the City's refusal to grant National six permits to construct new billboards violated the First and Fourteenth Amendments to the United States Constitution, brought suit against the City. Because National never obtained an official rejection of its permit applications, we find that it failed to present the district court with a ripe case. We therefore affirm the district court's grant of summary judgment with instructions to dismiss the case without prejudice for lack of jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND

National is a Delaware corporation and a wholly-owned subsidiary of Viacom Outdoor Inc., a corporation formerly known as Infinity Outdoor, Inc. National, a leader in the outdoor advertising industry, specializing in the leasing of billboards, has operated in the City of Miami for approximately forty years. National normally constructs its billboards on either leased or purchased property and then rents space on the billboards to advertisers. National operates more than forty outdoor advertising signs in various locations throughout the City of Miami.

2

Most of National's billboards display commercial messages, however a few of them display non-commercial, public interest messages.

In December of 2001, against the backdrop of on-going litigation between National and the City,[1] National sought permits to erect seven new billboards on private property located in the City of Miami. Under the City's comprehensive zoning plan, six of the seven proposed billboards were to have been located in an area zoned "C-1, commercial zone." City zoning clerks did not issue permits to National because the billboards it sought to construct exceeded the zoning ordinance's height limits for signs. In addition, the clerk orally informed National's agents that billboards were not permitted in the C-1 zone.

On February 19, 2002, National filed this action alleging that the City denied their applications because the City's "Sign Code"[2] prohibited offsite signs in the City's C-1 commercial zone, in violation of the First Amendment. National further alleged that the City's "Sign Code" was constitutionally suspect because it failed to

---

[1]In addition to this action, National filed a preceding action against the City. That case, *National Advertising Co. v. City of Miami*, Case No. 01-03039-CV-JLK (*National* I), challenged the constitutionality of the City's Zoning Ordinance in its entirety. *National* I and *National* II were consolidated in the district court below. However, we ordered the cases to be briefed separately. In the instant case, we asked the parties to focus solely on the denial of National's permit applications.

[2]National makes frequent references to the City's "sign code." However, the City does not have a sign code, as such. The City does have, as required by Florida law, a comprehensive zoning code that regulates, among other things, signs and billboards.

contain adequate procedural guidelines and vested excessive discretion in the hands of City officials to either approve or deny applications to construct signs.

After both parties conducted discovery, they filed cross summary judgment motions in March of 2003. The district court heard arguments for both cases in August of 2003. On September 25, 2003, the district court entered summary judgment for the City in *National* I and found that the City's Zoning Ordinance was constitutional in all respects.[3] The following day, the district court granted the City's motion for summary judgment in this action. The district court held that National's claims were not ripe pursuant to our holding in *Digital Props., Inc.* v. *City of Plantation*, 121 F.3d 586 (11th Cir. 1997), because National had failed to obtain a written denial of its permit application. National appeals.

## STANDARD OF REVIEW

We review the district court's order granting a motion for summary judgment *de novo*. We construe all facts and make all reasonable inferences in the light most favorable to the non-moving party. *Kesinger Ex Rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004). Under FED. R. CIV. P. 56, summary judgment is proper if the pleadings, depositions, and affidavits "show

---

[3]We reversed the district court's entry of summary judgment in *National* I and remanded with instructions to dismiss for lack of subject matter jurisdiction after we found that subsequent amendments to the City's zoning code mooted National's claims.

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

## DISCUSSION

The jurisdiction of federal courts is limited. The constitution dictates that the power of the federal courts is constrained by the requirement that they consider only "cases" and "controversies." U.S. CONST. art. III, § 2; s*ee, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60, 112 S. Ct. 2130, 2136, 119 L. Ed.2d 351 (1992); *Granite State Outdoor Adver. Co. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003). "This case-or-controversy doctrine fundamentally limits the power of federal courts in our system of government, and helps to 'identify those disputes which are appropriately resolved through judicial process.'" *Ga. State Conference of NAACP Branches v. Cox*, 183 F.3d 1259, 1262 (11th Cir. 1999) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 1722 109 L. Ed.2d 135 (1990)). In addition to the textual constitutional constraints on the power of federal courts to decide cases, we also recognize important prudential limitations. *Granite State*, 351 F.3d at 1116 (citing *Bennet v. Spear*, 520 U.S. 154, 162, 117 S. Ct. 1154, 1161, 137 L. Ed.2d 281 (1997) and *Lujan*, 504 U.S. at 560). While the constitutional aspect of our inquiry focuses on whether the Article III requirements of an actual "case or controversy" are met, the

5

prudential aspect asks whether it is appropriate for this case to be litigated in a federal court by these parties at this time. *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 759-60 (11th Cir. 1991).

When determining if a claim is ripe for judicial review, we consider both constitutional and prudential concerns. In some circumstances, although a claim may satisfy constitutional requirements, prudential concerns "counsel judicial restraint." *See Digital*, 121 F.3d at 589 (quoting *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 n.12 (D.C. Cir. 1986)). Our inquiry focuses on whether the claim presented is "of sufficient concreteness to evidence a ripeness for review." *Id.* Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes. *See id.*

Our ripeness inquiry requires a two part "determination of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* (citing *Abbot Lab. v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 1515-16, 18 L. Ed.2d 681 (1967); *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)). When a plaintiff is challenging a governmental act, the issues are ripe for judicial review if "a plaintiff . . . show[s] he has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act."

6

*Hallendale*, 922 F.2d at 760. As the district court correctly noted, while it is true that our review of a suit's ripeness is at its most permissive in cases concerning putative violations of the First Amendment, *id.*, that requirement may not be ignored.

We have also recognized that the ripeness doctrine not only protects courts from abusing their role within the government and engaging in speculative decision-making, but that it also protects the other branches from judicial meddling. One of the "basic rationale[s]" for the ripeness doctrine is "to protect the [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Digital*, 121 F.3d at 590 (internal quotation marks and citations omitted). When a court is asked to review decisions of administrative agencies, it is hornbook law that courts must exercise patience and permit the administrative agency the proper time and deference for those agencies to consider the case fully.

Turning to the facts in this case, it is clear that National never properly pursued its claim through the administrative process that the City's zoning ordinance made available to them. National's claim is not ripe because it failed to obtain a final denial of its applications. Although National's initial request for a

permit was not granted by the clerks in Miami's zoning department, National never received a final, written denial of their applications. Our reasoning in *Digital* is directly on point. As we held there, "[a] challenge to the application of a city ordinance does not automatically mature at the zoning counter." *Digital*, 121 F.3d at 590.

In *Digital*, we upheld the district courts dismissal of Digital's First Amendment challenge to the constitutionality of the City of Plantation's zoning ordinance because Digital failed to present a ripe case or controversy. In that case, Digital sought to establish an adult book and video store in Plantation. Digital assumed that Plantation's zoning scheme unconstitutionally barred adult businesses from operating anywhere within the city. However, Digital applied for a building permit to remodel a pre-existing structure for the purpose of opening an adult business. At the time Digital applied, they assumed their application would be rejected. Therefore, when an "Assistant Zoning Technician" did not immediately grant its permit, Digital filed suit in federal court alleging that Plantation's zoning scheme was unconstitutional, both facially and as applied. "Digital contended that [the zoning technician's] statement impaired its constitutional rights and constituted injury-in-fact." *Id.* at 589. Because Digital never obtained an actual denial of their application, the district court dismissed the

8

suit without prejudice for lack of subject matter jurisdiction, and we affirmed that decision. *Id.* at 591.

In this case, as in *Digital*, National "at a minimum . . . had the obligation to obtain a conclusive response from someone with the knowledge and authority to speak for the City regarding the application of the zoning scheme" to National's permits. *Id*. at 590. While there is some dispute why the City did not grant National's initial application, National failed to demonstrate that their application was conclusively *denied*. A zoning clerk's verbal statement or written notation on National's application that its proposed billboards were "too tall" or "in the wrong zone" is not conclusive evidence of a denial and does not amount to evidence of a dispute of "sufficient concreteness" for judicial review. *Id*. at 589. "Without the presentation of a binding conclusive administrative decision, no tangible controversy exists." *Id*. at 590.

The necessity of a "binding conclusive administrative decision" to ensure that the facts of a case are mature enough to permit meaningful review is amply demonstrated by this case. National has at various times (including during oral argument) claimed both that Miami's zoning ordinance is too vague for it to know what is required to get a permit and that it did not obtain a written denial because it was certain that its application would be denied. Conversely, the City has alleged

9

that National could have pursued a number of administrative options to protest its denial or it could have merely fixed specific deficiencies in the applications they presented.[4] It is precisely for this reason that without a "binding conclusive administrative decision, no tangible controversy exists." *Id.* As this case currently stands, a court is incapable of determining *if*, let alone why, National's applications were denied. Without that crucial information, it would be impossible to determine if the City's zoning ordinance violates the constitution. As in *Digital*, National's "erroneous presumptions and impatience led it to rush to the courthouse and present an insufficiently concrete claim." *Id.* at 591.

Having determined that National's claims are not fit for judicial review at this time, we turn to the second part of our inquiry: the hardship to the parties of withholding court consideration. We agree with the district court that National has failed to produce evidence demonstrating that it would sustain undue hardship as a result of withholding court consideration. It would have been far easier, and quicker, for National to have exhausted its administrative remedies or received a final written denial of its application instead of rushing to the federal courts for relief.

---

[4]It is relevant to note that National originally applied for seven permits. They were all initially rejected because the proposed billboards were too tall. Later, National resubmitted an application for a billboard that conformed to the height requirement in an area zoned C-2. The city granted National a permit to construct the billboard.

## CONCLUSION

We agree with the district court that National fails to present an actual case or controversy that is ripe for judicial review. Therefore, we affirm the district court's entry of summary judgment. However, we instruct the district court to dismiss the case without prejudice, so that National may re-file the case if it becomes ripe at some later date.

AFFIRMED WITH INSTRUCTIONS.