[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 9, 2007
THOMAS K. KAHN
CLERK

No. 06-15817
Non-Argument Calendar

_____

D. C. Docket No. 06-01402-CV-ORL-31-JGG

HUGH JOHNSON ENTERPRISES, INC.,
doing business as Club Harem,

Plaintiff-Appellant,

versus

CITY OF WINTER PARK, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 9, 2007)

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Hugh Johnson Enterprises, Inc., d/b/a Club Harem, appeals the dismissal of

its complaint as not being ripe for adjudication and lacking subject-matter jurisdiction. We AFFIRM.

## I. BACKGROUND

Club Harem, owned and operated by Hugh Johnson Enterprises, Inc., is the only licensed adult-entertainment establishment in Winter Park, Florida. The property on which the club is located has been used for adult entertainment, non-obscene erotic dancing, for approximately thirty years. Previously, Club Harem was licensed by Orange County and operated under its adult-entertainment code. In 2003, the City of Winter Park annexed the property on which Club Harem is located and other properties on Lee Road west to Interstate 4.

On March 17, 2006, Club Harem was raided by Winter Park police. Various arrests of patrons and employees occurred. Thereafter, Club Harem's attorney contacted the attorney for the City of Winter Park to ascertain whether the city was contemplating or intending to initiate licensing penalties against the nightclub. Following requests for documents, counsel for Club Harem learned that (1) at a meeting at Winter Park police headquarters on December 22, 2005, a detective had stated that the city would like to prevent Club Harem from doing future business by having its license revoked, (2) a document instructed that a determination of whether Club Harem's city occupational license could be revoked be made, and (3)

2

a response letter dated September 5, 2006, from the assistant city attorney to Club Harem's counsel's letter asking if the city intended to pursue a licensing action against the nightclub, states in pertinent part:

> Please be advised that there is no pending proceeding to revoke Club Harem's license. However, the City of Winter Park will continue to seek to enforce all of its laws, ordinances, or regulations against any party who appears to be in violation of them.
> As such, if Club Harem is in violation of any of the City of Winter Park's laws, ordinances, or regulations, the City of Winter Park reserves all of its rights to take the appropriate enforcement action.

R1-1 at Tab C (emphasis added). Rather than face the loss of its license under an allegedly unconstitutional ordinance, Club Harem sought a declaratory judgment and injunction, which would decide that the Winter Park Adult Entertainment Code, sections 14-50 (Suspension) and 14-51 (Revocation), are unconstitutional and unenforceable. The district judge granted Winter Park's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and concluded that Club Harem's action was not ripe for adjudication and that the court lacked subject-matter jurisdiction. This appeal ensued.

## II. DISCUSSION

We review the granting of a motion to dismiss under Rule 12(b)(6) de novo and apply the same legal standard used by the district court. Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). "'When considering a motion to

3

dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Thaeter v. Palm Beach County Sheriff 's Office, 449 F.3d 1342, 1352 (11th Cir. 2006) (citation omitted). Based on the facts as stated in the complaint and attached exhibits, the threshold decision is ripeness.

The United States Constitution limits the jurisdiction of federal courts by permitting them to consider only disputes that rise to the level of being "Cases" or "Controversies." U.S. Const. art. III, § 2; National Adver. Co. v. City of Miami, 402 F.3d 1335, 1338 (11th Cir. 2005) (per curiam) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60, 112 S.Ct. 2130, 2136 (1992)), cert. denied, __ U.S.__, 126 S.Ct. 1318 (2006). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997). The two-step "ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. Id. The court must determine "'whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.'" Id. (citation omitted).

4

The plaintiff corporation in Digital Properties sought to open an adult book and video store, although Digital had obtained prior legal advice that the municipal zoning code did not allow adult book and video stores anywhere in the city. Based on the rationale that the restriction made the zoning code unconstitutional and unenforceable, Digital filed in federal court a case challenging the municipal zoning scheme as unconstitutional. The city filed a motion to dismiss for lack of subject-matter jurisdiction under the ripeness doctrine, and the district judge granted the motion in part because Digital's "rush to the courthouse was premature." Id.

On appeal, we concluded that Digital had failed to present a ripe claim for review, because it did not pursue its claim with the requisite diligence to show that a mature claim or controversy existed. Id. at 590. We reasoned "that Digital's presumption of constitutional infirmity bred impatience and prompted it to file an unripe claim," when the ripeness doctrine requires a formalized decision from a governmental authority, "and its effects [must be] felt in a concrete way by the challenging parties." Id. (quoting Abbott Labs. v. Gardner, 387 U.S. 135, 148-49, 87 S.Ct. 1507, 1515 (1967)). We explained that "Digital's impatience precluded the formation of a concrete case or controversy"; because there was no tangible controversy, the federal courts were without authority to act. Id. (emphasis added).

5

Therefore, we concluded that Digital's "anticipated belief" that the city would interpret its code in a way that violated Digital's rights was insufficient to meet the ripeness standard; consequently, there was no subject-matter jurisdiction over the dispute. Id. We have recognized that, to challenge the constitutionality of government action, a proponent has the obligation to obtain a conclusive and definitive government decision regarding the alleged unconstitutional application of the legislation questioned.[1] National Adver., 402 F.3d at 1340 (citing Digital Properties, 121 F.3d at 590).

The Winter Park Adult Entertainment Code, attached to Club Harem's complaint, states the procedures for suspension and revocation of an adult entertainment license in sections 14-50 and 14-51. An adult-entertainment license may be suspended for thirty (30) days for "three or more violations of article VI of the Orange County Adult Entertainment Code" within a two-year period, if there is a conviction. Winter Park Adult Entertainment Code § 14-50(c)(1). After a first suspension, then another conviction can result in a ninety-day suspension. Id. at §

---

[1] The city has argued that Club Harem has confused an occupational license for a business with an adult-entertainment license. Its contention is that the reference to a business license in Club Harem's correspondence with the city's attorneys, attached as exhibits to its complaint, means an occupational license rather than an adult-entertainment license. Counsel for Club Harem refutes this assertion in his reply brief. Reply Br. at 5-6. Because Club Harem is the only licensed adult entertainment business in Winter Park, we conclude that the business license that Club Harem is challenging in its complaint for declaratory judgment and injunctive relief is its license for adult entertainment and not its occupational license required for all businesses.

14-50(c)(2).  Finally, if a license has been suspended for ninety days, and there is within two years of the conviction leading to that suspension another conviction, then the license can be suspended for 180 days.  Id. at § 14-50(c)(3).  Absent false information in the application process, an adult-entertainment license can be revoked only if, within two years of the conviction that led to the 180-day suspension, there is another conviction.  Id. at § 14-51(b)(1).

Club Harem has not alleged that there have been any suspensions or convictions under the Winter Park Adult Entertainment Code.  All that Club Harem's complaint alleges is that the City of Winter Park has an inchoate desire to use the city's Adult Entertainment Code to revoke Club Harem's license based on a comment by a detective of the Winter Park Police Department that he would like to see the revocation process occur.  Absent from the complaint is any allegation that the city has taken identifiable steps to revoke Club Harem's license.  Moreover, in response to inquiry by Club Harem's counsel, the assistant city attorney responded that no revocation proceeding regarding Club Harem was pending.  Consequently, the city has taken no concrete or cognizable action to suspend or revoke Club Harem's license.  Because it has suffered no action to suspend or revoke its license whatsoever from Winter Park through its adult entertainment ordinance, Club Harem's challenge to the constitutionality of the

7

Winter Park Adult Entertainment Code is premature and unripe for adjudication. Therefore, the district judge properly dismissed Club Harem's complaint under Rule 12(b)(6).

## III. CONCLUSION

Club Harem has appealed the dismissal of its complaint challenging the constitutionality of the Winter Park Adult Entertainment Code. Because the city has taken no steps to suspend or revoke Club Harem's adult entertainment license, Club Harem's request for preliminary constitutional adjudication of the ordinance is not ripe, and subject-matter jurisdiction is lacking. Accordingly, the district judge's dismissal of Club Harem's complaint is **AFFIRMED**.