SOUTH FLORIDA EQUITABLE
FUND LLC, Plaintiff,

v.

CITY OF MIAMI, FLORIDA,
Defendant.

Case No. 10–21032–CIV.

United States District Court,
S.D. Florida.

March 14, 2011.

Jamie Zysk Isani, Thomas Richard Julin, Hunton & Williams LLP, Miami, FL, for Plaintiff.

Warren Bittner, Miami City Attorney's Office, Miami, FL, for Defendant.

---

*ORDER ON MOTIONS FOR*
*SUMMARY JUDGMENT*

URSULA UNGARO, District Judge.

THIS CAUSE came before the Court upon Plaintiff South Florida Equitable Fund, LLC's and Defendant City of Miami's cross motions for summary judgment. (D.E. 13 & 22). The Motions are now ripe for disposition.

THE COURT has considered the Motion and pertinent portions of the record and is otherwise fully advised in the premises.

## I. Procedural Background

In its Complaint, Plaintiff South Florida Equitable Fund, LLC ("SFEF") alleges that it builds, operates, and maintains outdoor signs and billboards in South Florida, including Miami. (Complaint, D.E. 1, ¶ 2).[1] It seeks declaratory and injunctive relief, and compensatory damages pursuant to 42 U.S.C. § 1983 for the City's allegedly unconstitutional application of Zoning Ordinance 11000 ("Old Zoning Ordinance"), which, until June 2010 regulated, *inter alia,* outdoor advertising signs. (D.E. 1 at 12, A–H). The Court has permitted CBS Outdoor, Inc. ("CBS") and Clear Channel, Inc. ("Clear Channel"), two outdoor advertising companies that lease property for the construction and operation of outdoor signs and billboards, to intervene. (D.E. 50). SFEF and the City have moved for summary judgment. The intervenors have not moved for summary judgment but have filed memoranda supporting the City's position.

## II. Factual Background

The following relevant facts are undisputed unless stated otherwise.

---

1. The undisputed facts reflect that SFEF owns two billboards, one of which it acquired approximately one week before it filed this lawsuit. There is no other evidence in the record that apart from its ownership of these two billboards, SFEF builds, operates or maintains outdoor signs and billboards in South Florida.

## A. The Old Zoning Ordinance

On April 1, 2010, at the time that SFEF filed this lawsuit, the Old Zoning Ordinance regulated all signs, including "outdoor advertising signs." (D.E. 20–1). Section 10.2 defined an "outdoor advertising sign" as a sign "used in the conduct of the outdoor advertising business." (D.E. 20–1, Ex. 1). Pursuant to section 10.2, "outdoor advertising business" was

> The business of receiving or paying money for displaying signs where sign copy does not pertain to the use of the property, a product sold, or the sale or lease of the property on which the sign is displayed and which does not identify the place of business as purveyor of the merchandise or services advertised on the sign.

(*Id.*). Section 10.4.5 of the Old Zoning Ordinance provided that "no new freestanding 'Outdoor advertising signs,' . . . shall be allowed." Section 10.4.5 also provided,

> Notwithstanding any provisions of this Zoning Ordinance to the contrary, permits for outdoor advertising signs may be issued pursuant to a Settlement Agreement authorized by Resolution passed by the City Commission, in conjunction with the settlement of related litigation, which expressly authorizes issuance of such permits for said outdoor advertising signs, and then only under the terms and conditions of settlement agreements that result in a net reduction in the party to the settlement's number of outdoor advertising signs located in the City of Miami.

(D.E. 1 ¶ 17; D.E. 8 ¶ 17). SFEF filed this lawsuit to challenge the constitutionality of the Old Zoning Ordinance after the City allegedly rejected the settlement agreement it proposed pursuant to section 10.4.5. (*See* D.E. 1).

## B. The City's Zoning Ordinance 13181 (the "New Zoning Ordinance")

On June 10, 2010, two months after SFEF filed this lawsuit, the City Commission enacted Zoning Ordinance 13181. (D.E. 20–1, Ex. A). The Preamble of the New Zoning Ordinance provides that it "supercedes and controls over provisions of any other law, ordinance, rule, regulation of the City," including the challenged provisions of Article 10 of the Old Zoning Ordinance. (D.E. 22–5, at 1). The following are other pertinent portions of the Preamble:

> WHEREAS, because of the visual bright and deleterious effects of its neighborhoods resulting from billboards, the City of Miami ("City") has a substantial and significant government interest in reducing the number of billboards within the City, especially within its neighborhoods; and . . . .
>
> WHEREAS the City also has a substantial and significant government interest in promoting public safety and welfare by providing reasonable protection to the visual environment and by ensuring that billboards do not interfere with traffic safety or otherwise endanger public safety;
>
> WHEREAS the Florida Legislature, by enactment of Section 70.20, Florida Statutes (2002), has empowered the City, for the purpose of accomplishing public goals, to enter into relocation and reconstruction agreements . . . .; and
>
> WHEREAS it is hereby declared public goals of the City to reduce the number of billboards within its neighborhoods, and to prevent the proliferation of illegally constructed billboards throughout the City."

(*Id.*). Section 62–702 of the New Zoning Ordinance provides that "no new freestanding 'Billboards' . . . shall be permitted anywhere within the territorial boundaries

of the City." (*Id.* at § 62–702). Section 62–703 states that "[p]ursuant to the authority granted to the City by the Florida Legislature under section 70.20 of the Florida Statutes[2] ... unexpired permits for Billboards may be amended pursuant to a relocation and reconstruction agreement...." (*Id.* at § 62–703). Section 62–704 sets forth fourteen requirements that a relocation and reconstruction agreement must meet and provides that the "City Manager ... shall negotiate the terms of any relocation and reconstruction agreement ..." (*Id.* at § 62–704).

### C. Clear Channel's settlement agreement and CBS's lawsuit under the Old Zoning Ordinance

In 2001, Clear Channel and CBS began to challenge the City's Old Zoning Ordinance after they were subject to code enforcement proceedings, in which the City issued Notices of Violation to outdoor advertising sign owners with illegal and nonconforming signs. (D.E. 1 ¶¶ 10, 12; D.E. 8 ¶¶ 10, 12).[3] In July 2001 and February 2002, National/CBS filed two lawsuits in federal court against the City, challenging the City's refusal to grant it permits for new signs and the constitutionality of the Old Zoning Ordinance. (D.E. 17–1 ¶ 19). Carter and Clear Channel did not file suit, opting instead to seek compromise and resolution with the City as it continued to defend the code enforcement actions on state and municipal law grounds. (*Id.* at

¶ 20). In July 2004, the City and Clear Channel agreed upon a settlement agreement in which the City granted Clear Channel new billboard permits in exchange for the removal of certain of its existing billboards and paying certain fees. (D.E. 1–1, Ex. B).

### D. CBS's settlement agreement with the City under the Old Zoning Ordinance

On May 1, 2008, while CBS was in the process of negotiating a settlement with the City, it entered into a Letter of Understanding (LOU) with Outlook Media of South Florida ("Outlook"). The LOU provided, *inter alia*, that if Outlook assisted CBS in securing a settlement agreement with the City for seven "amended permits" as defined in the settlement agreement, and acquired four additional "commercially viable" sites for outdoor advertising signs, CBS would pay Outlook a development fee and certain rents for each of the four sites and assign Outlook the rights to one of its "amended permits" under the settlement agreement with the city. (D.E. 17–3). On July 18, 2008, CBS entered into a settlement agreement with the City that granted CBS new billboard permits in exchange for removing certain existing billboards and paying certain fees. (D.E. 1–1, Ex. C).[4] CBS admits that Outlook assisted it in finalizing the settlement agreement with the City but disputes that Outlook produced four "commercially viable" sites.

---

**2.** Under section 70.20(1) of the Florida Statutes,

"[m]unicipalities ... are specifically empowered to enter into relocation and reconstruction agreements on whatever terms are agreeable to the sign owner and the municipality," and "a 'relocation and reconstruction agreement' means a consensual, contractual agreement between a sign owner and a municipality ... for either the reconstruction of an existing sign or the removal of a sign and construction of a new sign to substitute for the sign removed."

Fla. Stat. § 70.20(1). (D.E. 20–1, Ex. 3).

**3.** Clear Channel, National Advertising Company ("National"), and Carter–Pritchett–Hodges, Inc. ("Carter") owned and managed the majority of the outdoor advertising signs that were the subject of the code enforcement proceedings. (D.E. 20–5). CBS is the successor-by-merger to National. (*Id.*).

**4.** There is nothing on the record indicating whether or not the City Commission approved this settlement agreement.

(D.E. 17–1 ¶ 78). Ultimately, CBS did not assign Outlook the rights to any of the billboard permits it obtained through its settlement with the City. (*Id.* at 86).

### E. Outlook becomes SFEF and proposes its own settlement agreement under the Old Zoning Ordinance

In October 2008, the principals of Outlook, Harkley Thorton and Santiago Echemendia, formed SFEF for the purpose of obtaining their own settlement agreement [5] with the City, but before they could do that, they needed to obtain billboards. (D.E. 17–7 ¶ 99; D.E. 20–9, Ex. 2). On or about January 8, 2009, SFEF contracted to purchase the "Boardworks Sign" from the Boardworks Outdoor Advertising Company. (D.E. 1 ¶ 32). In February 2010, SFEF acquired the rights to the "Hampton Inn Sign," located at 299 S.W. 17th Road, Miami, Florida. (D.E. 1 ¶ 31). In March 23, 2010, SFEF acquired the title to the Boardworks Sign, located at 555 N.W. 79th Street, Miami, Florida. (D.E. 1 ¶¶ 32–33).

On February 12, 2010, before SFEF had closed on the Boardworks Sign, the City issued a Notice of Violation to the owner of the property where the Boardworks Sign is located, seeking removal of the sign on the ground that it was erected without a billboard permit. (D.E. 20–4). Shortly after the City issued its Notice of Violation, Echemendia met with the City Manager at the time, Pedro Hernandez, and other city employees and proposed an agreement to settle the dispute regarding the Boardworks Sign. (D.E. 38–6 ¶ 11). During the week of February 22, 2010, Carlos Migoya replaced Pedro Hernandez as City Manager. (*Id.* at ¶ 12). Shortly thereafter, Echemendia asked Migoya to place the proposed settlement agreement on the City agenda for the March 25, 2010 City Commission meeting, but Migoya deferred Echemendia's request to the City Attorney's Office. (*Id.* at ¶ 15).

On February 25, 2010, Echemendia submitted to the City Attorney via email a settlement proposal providing that SFEF would remove the Boardworks Sign and surrender the Hampton Inn sign, in exchange for the City granting SFEF a permit to construct a new outdoor advertising sign. (D.E. 17–28). The email stated, "[p]ursuant to my discussion with the Interim City Manager earlier today, I am attaching a proposed billboard settlement agreement between the City and South Florida Equitable Fund LLC, regarding the removal of billboard structures pursuant to Section 10.4.5 of the City Code." (*Id.*). SFEF copied the City Manager to the email. (*Id.*). On or about March 8, 2010, Deputy City Attorney Warren Bittner and Assistant City Attorney Veronica Xiques of the City Attorney's Office informed Echemendia that upon the direction of the City Manager, they would no longer "review" SFEF's settlement proposal. (D.E. 38–16 ¶ 16).

### F. SFEF's lawsuit in federal court

On April 1, 2010, less than one month after the City Attorney's Office allegedly

---

**5.** SFEF refers to its proposed settlement agreement under section 10.4.5 of the Old Zoning Ordinance as a proposal for a "permit by settlement." By terming its settlement agreement a "permit by settlement," SFEF implies that the City Commission's approval or denial of the agreement is *ipso facto* approval or denial of an outdoor advertising sign permit. Section 10.4.5 states that "permits for outdoor advertising signs *may* be issued *pursuant* to a Settlement Agreement." (emphasis added). Thus, the plain language of the section indicates that the Settlement Agreement itself does not guarantee a permit and that the City issues permits in accordance with the terms set forth in each Settlement Agreement. Accordingly, SFEF's use of the term "permit by settlement" reflects an overstatement of its rights under section 10.4.5.

ceased reviewing SFEF's settlement proposal and a mere week after the March 25th City Commission meeting where SFEF hoped to obtain acceptance of its settlement proposal, SFEF filed the instant lawsuit against the City. (D.E. 1). In Count I, SFEF claims under 42 U.S.C. § 1983 that the City violated the Equal Protection Clause by approving CBS and Clear Channel's settlement agreements but refusing to similarly approve SFEF's proposed settlement agreement. (D.E. 1 ¶ 49–55). In Counts II and III, SFEF alleges under 42 U.S.C. § 1983 that the City's approval process for new permits violates the First and Fourteenth Amendments. (D.E. 1 ¶ 49–70). SFEF seeks declaratory and injunctive relief and compensatory damages. (*See* D.E. 1).

### III. Summary Judgment Standard

Summary judgment is authorized under Federal Rule of Civil Procedure ("Rule") 56 only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When determining whether the moving party has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rojas v. Florida,* 285 F.3d 1339, 1341–42 (11th Cir.2002).

 The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a

sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).[6] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-mov-

---

**6.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

ing party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505.

## IV. Discussion

SFEF has moved for summary judgment against the City for its alleged violation of SFEF's constitutional rights. In addition to moving for summary judgment on the merits of SFEF's constitutional claims, the City has moved for summary judgment on the grounds that SFEF's claims are not ripe because, *inter alia*, SFEF failed to obtain a final decision from the City Commission on the settlement proposal and on the grounds that the claims are moot because the City enacted a new zoning ordinance.

### A. Ripeness

The City argues that the Court should apply the Eleventh Circuit's rationale in *National Advertising Co. v. City of Miami*, 402 F.3d 1335 (11th Cir.2005) (*National I*) and *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586 (11th Cir.1997) to this case and grant summary judgment on ripeness grounds, because: (1) SFEF, like the plaintiffs National and Digital, has failed to present a mature claim for review; (2) SFEF, like National and Digital, has not obtained a final decision from the City; and (3) SFEF, like National and Digital, has shown no hardship from withholding judicial review and requiring a final decision. SFEF argues that its claims survive the City's ripeness challenge, because at least one of the claims is a void-for-vagueness claim and because SFEF has demonstrated that it would have been futile to pursue a final decision.

 The Court disagrees with SFEF. Federal courts are courts of limited jurisdiction. The power of the federal courts is constrained by the requirement that they consider only "cases" and "controversies." U.S. Const. Art. III, § 2; *see, e.g. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Granite State Outdoor Adver., Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1116 (11th Cir.2003). "The ripeness doctrine involves both jurisdictional limitations imposed by Article III's requirement of a case or controversy and prudential considerations arising from problems of prematurity and abstractness that may present insurmountable obstacles to the exercise of the court's jurisdiction, even though jurisdiction is technically present." *Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir.1984). When determining whether a case is ripe, a court must specifically consider "(1) the fitness of the issue for judicial decision, and (2) the hardship to the parties withholding court consideration." *Digital*, 121 F.3d at 589.

### 1. Fitness

 The Court first considers the fitness of the issue for judicial decision. In *National I*, a billboard company, National, challenged a city zoning clerk's refusal to grant it six permits to construct new billboards on the grounds that the refusal violated their First and Fourteenth Amendment rights. The city's zoning clerk did not issue permits to National, because the billboards National sought to construct exceeded the zoning ordinance's height limit for signs. *National I*, 402 F.3d at 1338. The clerk also orally informed National that billboards were not permitted in the particular commercial zone where National intended to erect them. *Id.* National filed suit in federal court, and the district court granted the City's motion for summary judgment, holding that National's claims were not ripe, because it had failed to obtain a written denial of its permit application.

*Id.* The Eleventh Circuit affirmed the district court's grant of summary judgment, holding that "National's claim is not ripe because it failed to obtain a final denial of its applications." *Id.* at 1340. The Court reasoned that

> National had the obligation to obtain a conclusive response from someone with the knowledge and authority to speak for the City.... National failed to demonstrate that their application was conclusively *denied* .... A zoning clerk's verbal statement or written notation on National's application that its proposed billboard is too tall or in the wrong zone is not conclusive evidence of a denial ...

*Id.* (internal quotations and citations omitted).

In *Digital,* a case similar to *National I,* the Eleventh Circuit addressed whether a First Amendment challenge to the City of Plantation's zoning ordinance was ripe for judicial consideration. The plaintiff, Digital Properties, Inc., sought to construct an adult video and bookstore in a general business district. *Digital,* 121 F.3d at 587. Digital attempted to file copies of the construction plans with the city, but a representative of the zoning department allegedly told Digital that the city did not allow construction for such use and refused to accept the plans. *Id.* at 588. Digital never contacted the Director of Building and Zoning to challenge the zoning department representative's denial. *Id.* at 589. Instead, it filed suit in district court five days later. *Id.* The district court dismissed Digital's action, and Digital appealed. On appeal, the Eleventh Circuit affirmed the district court's ruling, holding that Digital's claim was not ripe, because it failed to obtain a "conclusive response" from the city. *Id.* at 590.

Following the holdings of *National I* and *Digital,* the undersigned finds that this case also fails to present an issue that is fit for judicial determination. SFEF,

like the plaintiffs in *National I* and *Digital,* failed to obtain a final decision on its settlement proposal from "someone with the knowledge and authority to speak for the City." *See National I,* 402 F.3d at 1338. Section 10.4.5. of the Old Zoning Ordinance clearly states that the *City Commission* must authorize the settlement proposal by a Resolution. Thus, the threshold issue in the ripeness inquiry here is whether the City Attorney's Office's March 8th statement that it would no longer review SFEF's settlement proposal constitutes the City Commission's final decision. SFEF argues that once the City Attorney's Office ceased reviewing SFEF's settlement proposal, it had no way of accessing the City Commission to get a final decision on the proposal. The City contends that SFEF could have independently obtained the City Commission's consideration of its proposal at any time.

The Code of the City of Miami, Florida 1997 ("Miami City Code") contains procedures whereby citizens and lobbyists can directly obtain access to the City Commission. Section 2–23(c)(3) states how a citizen can have his or her item placed on the City Commission's agenda:

> Any citizen shall be entitled to be scheduled on the agenda of a regular meeting of the city commission for presentation of information and material to be considered by the commission within the scope of the jurisdiction of the city commission after the city manager has communicated with the citizen and reviewed or investigated the citizen's issue, unless otherwise directed by the mayor or a member of the city commission.

Miami City Code 1997 § 2–33(c)(3).

Assuming that SFEF or any of its members is considered a "citizen" under the Miami City Code, section 2–33(c)(3) indicates that SFEF could have required the City Manager to "communicate" with

SFEF's representative concerning the settlement proposal, to "review and investigate" the settlement proposal, and then to place it on the Commission agenda. However, SFEF has not produced any evidence indicating that after the City Attorney ceased reviewing the proposal, it approached the City Manager to request that he "review and investigate" the proposal and place it on the agenda.[7] Moreover, had the City Manager declined to place the proposal on the agenda, a member or representative of SFEF could have, pursuant to section 2–33(c)(2), asked the Mayor or a City Commissioner to do the same. *See Tari v. Collier County,* 56 F.3d 1533, 1536 (11th Cir.1995) ("[If] other actors can still participate in the [City's] decision making, then a final decision has not yet been made.").

The Court further observes that section 2–654 sets forth the procedures that a lobbyist must follow in order approach a "city official, a city board member, the city manager or city staff." These procedures indicate that any member of SFEF that properly registered as a lobbyist or any lobbyist employed by SFEF could have directly approached a City Commissioner to have its settlement proposal placed on the City Commission's agenda for authorization by Resolution. In other words, SFEF did not have to go through the City Attorney's Office or even the City Manager to have its proposal authorized by the City Commission. In spite of rules that afford lobbyists direct access to a City Commissioner, there is no evidence on the record that a member of SFEF registered as a lobbyist and independently lobbied a City Commissioner, or that SFEF hired an outside individual or entity to do the same.

Accordingly, SFEF did not obtain a "conclusive response" from the City Commission, who, according to section 10.4.5 of the Old Zoning Ordinance, is the only entity with the "authority to speak for the City" regarding the authorization of settlement agreements. *See National I,* 402 F.3d at 1340; *Digital,* 121 F.3d at 590; *see also Reserve Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1382–83 (11th Cir.1994) (claims are unripe despite that the "record [was] rife with references to informal efforts by [plaintiff] to have its permit returned" after revocation, because no formal decision was rendered). Instead it chose to "rush to the courthouse" with unripe claims. *See National Advertising Co. v. City of Miami,* 288 F.Supp.2d 1282, 1283 (S.D.Fla.2003).

The Court next addresses SFEF's arguments against the City's ripeness challenge.

### a. Count II as a void-for-vagueness challenge

SFEF relies on *Harrell v. The Florida Bar* to argue that Count II of its Complaint is a void-for-vagueness challenge that survives the ripeness inquiry. *See* 608 F.3d 1241 (11th Cir.2010) (holding that

---

7. SFEF's arguments imply that the City Manager somehow designated the City Attorney to negotiate and execute the settlement agreement with SFEF and place the agreement on the City Commission's agenda. While Section 15 of the Charter of the City of Miami ("Miami City Charter") gives the City Manager or his "designee" the power to execute contracts and other instruments," pursuant to the Miami City Code, only the City Manager, the Mayor, or a Commissioner can place a citizen's issue on the City Commission's agenda. *See* Charter of the City of Miami § 15. Moreover, there is nothing on the record that indicates that the City Manager designated the City Attorney to make a final decision regarding the execution of the proposed settlement agreement and its placement on the City Commission's agenda, such that SFEF was prevented from approaching the City Manager to confirm the City Attorney's March 8th advice that it would no longer review the proposal.

when a speech restriction is challenged on vagueness grounds, it is immaterial whether the party challenging the measure even applied for permission to engage in the challenged conduct because the very existence of censorial power is unacceptable). SFEF, however, cannot justify its "rush to the courthouse" on these grounds, because Count II is not and cannot be construed as a vagueness challenge. Nowhere in Count II does SFEF allege that a reasonable person reading Article 10 of the Old Zoning Ordinance with common understanding would be unable to discern the meaning of its terms. *See This That and Other Gift and Tobacco, Inc. v. Cobb County, Ga.*, 285 F.3d 1319, 1325 (11th Cir.2002). Therefore, the ripeness inquiry is relevant to the claims in Count II, and for the reasons already stated, those claims, along with the rest of the claims in the Complaint, are unripe.

### b. Futility of obtaining a final decision from the City Commission

█ SFEF next argues that because it would have been futile for SFEF to pursue a final decision from the City, its claims are ripe. It cites *Strickland v. Alderman*, 74 F.3d 260 (11th Cir.1996) in support of its argument. In *Strickland*, a subdivision owner brought due process and equal protection claims against the city, alleging that the city selectively enforced a standing water ordinance against him and arbitrarily denied him building permits. *See Id.* The Eleventh Circuit noted that a claim is ripe when a plaintiff has demonstrated that it would be futile to exhaust every remedy; however, the Court found that the subdivision owner was unable to demonstrate futility because he failed to comply with the permit application process and thus afforded the city no opportunity to render a final decision. *Id.* at 266. Here, SFEF has failed to demonstrate futility, merely stating that "futility is apparent in the record." (D.E. 36 at 24). A

review of the record reveals that just like the subdivision owner in *Strickland*, SFEF failed to comply with the relevant city law, section 10.4.5 of the Old Zoning Ordinance, by not seeking authorization of its settlement agreement from the City Commission. Thus, SFEF, like the subdivision owner in *Strickland*, did not give the City Commission an opportunity to render a final decision. Accordingly, SFEF"s claims are unfit for judicial review.

### 2. Hardship

█ Having determined that SFEF"s claims are unfit for judicial review, the Court determines the hardship, if any, to the parties of withholding consideration. Less than one month after City Attorney's Office ceased reviewing SFEF's settlement proposal, Plaintiff filed this lawsuit. If SFEF had approached the City Manager for a review of the City Attorney's decision or directly approached a City Commissioner to press that its settlement proposal be placed on the City Commission's agenda, SFEF would be in a better position to assert hardship. It would have been "far easier, and quicker for [SFEF] to have exhausted its administrative remedies ... instead of rushing to the federal courts for relief." *National I*, 402 F.3d at 1341. Like the plaintiffs in *National I*, SFEF has failed to "[demonstrate] that it would sustain an undue hardship as a result of withholding court consideration." *See Id.* Accordingly, the Court finds that SFEF"s claims, premised on the City's denial of its settlement proposal, do not present an actual case or controversy ripe for judicial review.

### B. Mootness

█ The City argues that SFEF"s constitutional challenges to the Old Zoning Ordinance are moot because the Old Zoning Ordinance was superceded in June

2010 by the enactment of the New Zoning Ordinance. SFEF argues that its challenges are not moot because (a) the City did not validly enact the new ordinance, (b) the City passed the ordinance in bad faith, (c) the new ordinance does not alter the challenged portions of the old ordinance, and (d) SFEF's right to a permit vested upon submitting its settlement proposal under the old ordinance. By its very nature, a moot suit "cannot present an Article III case or controversy and the federal court lacks subject matter jurisdiction to entertain it." *Coral Springs Street Systems, Inc. v. City of Sunrise,* 371 F.3d 1320, 1328 (11th Cir.2004) (internal citations omitted). A change in the law, such as amending a zoning ordinance as was done here, can give rise to mootness. *National Advertising Co. v. City of Miami,* 402 F.3d 1329, 1332 (11th Cir.2005) (*National II*). The Eleventh Circuit and the Supreme Court have repeatedly held that the repeal of an amendment to an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed law. *Id.* For example, in *Coral Springs,* the Eleventh Circuit noted that "a challenge to the constitutionality of a statute is mooted by repeal of the statute." 371 F.3d at 1329. Similarly, in *National II,* the Eleventh Circuit held that "when an ordinance is repealed by the enactment of a superceding statute, the superceding statute moots the case." 402 F.3d at 1331 (quoting *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1310 (11th Cir.2000)). Furthermore, the Supreme Court has many times held that amendments or revocation of challenged legislation renders the lawsuit moot and deprives the court of jurisdiction. *See, e.g., Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 474, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (holding that a Commerce Clause-based challenge to a Florida banking statute was rendered moot by amendments to the law); *Massachusetts v. Oakes,* 491 U.S. 576, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989) (holding that an over breadth challenge to a child pornography law was rendered moot by amendment to the statute); *Kremens v. Bartley,* 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977) (holding moot a constitutional challenge to a state statute governing the involuntary commitment of mentally ill minors because the law had been replaced by a different state statute).

▪ On June 10, 2010, the City entirely changed the provisions of the ordinance that are the targets of SFEF's lawsuit.[8] The New Zoning Ordinance repealed Article 10 of the Old Zoning Ordinance. Therefore, the new ordinance moots SFEF's claim in Count II of the Complaint that Article 10 is unconstitutional on its face because it "lacks procedural safeguards" and "lacks the necessary objective standards to guide government officials and limit their discretion." (*See* D.E. 1 ¶¶ 58–60). It also moots SFEF's claim in Count III that section 10.4.5 of the Old Zoning Ordinance is unconstitutional because it prohibits outdoor advertising without promoting an important government interest. Accordingly, in keeping with the holdings of *National II* and *Coral Springs,* the Court finds that the New Zoning Ordinance renders moot SFEF's claims for prospective relief, including its facial challenge. *See National II,* 402 F.3d at 1332; *Coral Springs,* 371 F.3d at 1329. The Court now addresses SFEF's arguments against mootness.

---

**8.** Chapter 62, Article XIII, Division 6 of the New Zoning Ordinance regulates billboards. (*See* D.E. 22–5 at Preamble). Section 62–700 provides that "[t]he provisions of [Division 6 Billboards] shall supercede and control over any other law, ordinance, rule or regulation of the city." (D.E. 22–5 at § 62–700).

### 1. Validity of the New Zoning Ordinance

 SFEF contends that the New Zoning Ordinance is void because the City enacted it without providing notice pursuant to the notice provisions in sections 166.041(3)(a) and (c) of the Florida Statutes and a void ordinance cannot moot a challenge to an ordinance it purports to repeal. Section 166.041(3)(a) provides that a proposed ordinance "shall at least 10 days prior to adoption, be noticed in the newspaper ..." Fla. Stat. § 166.041(3)(a). Subsection 3(c) provides that if a proposed ordinance changes the "actual list of permitted, conditional, or prohibited uses within a zoning category," the governing body must

> hold two advertised public hearings on the proposed ordinance. At least one hearing shall be held after 5 p.m. on a weekday, unless the local governing body, by a majority plus one vote, elects to conduct the hearing at another time of day. The first public shall be held at least 7 days after the day that the first advertisement is published. The second hearing shall be held at least 10 days after the first hearing and shall be advertised at least 5 days prior to a public hearing.

Fla. Stat. § 166.041(3)(c). The City argues that the notice provisions do not apply to the New Zoning Ordinance because the New Zoning Ordinance does not change the "permitted, conditional, or prohibited uses within a zoning category" and that challenges to the new ordinance are beyond the scope of this case as framed by the specific allegations in SFEF's Complaint.

The Court agrees with the City. Sections 166.041(3)(a) and (c) of the Florida Statutes are inapplicable because the New Zoning Ordinance does not change the prohibited uses in the zoning category. Like the Old Zoning Ordinance, the New Zoning Ordinance still prohibits "new billboards" and its goal is the same as the goal of the old ordinance, which is "to reduce the number of billboards within the [City's] neighborhoods, and to prevent the proliferation of illegally constructed billboards throughout the City." (*See* D.E. 22–5, at Preamble). Moreover, as the City correctly points out, challenges to the validity of the new ordinance are beyond the scope of the allegations made by SFEF in its Complaint. Accordingly, SFEF has failed to demonstrate that the new zoning ordinance is void due to the City's failure to comply with section 166.041(3) of the Florida Statutes, and thus has failed to persuade the Court that its claims are not moot.

### 2. The City's motivation for passing the new ordinance

SFEF alleges that the City changed the old ordinance in bad faith because its sole purpose for changing the ordinance was to moot SFEF's lawsuit and because it intends to return to its prior regulatory regime at the conclusion of this litigation. The City denies SFEF's allegations and affirmatively states that it did not change the ordinance to moot the lawsuit and that it fully intends not to return to the old ordinance.

 The Court is unpersuaded that SFEF's allegations, which amount to no more than speculation, raise a genuine issue of material fact. Governmental entities enjoy a presumption that they will not resume their prior challenged activities. *Seay Outdoor Advertising, Inc. v. City of Mary Esther, Fla.*, 397 F.3d 943, 947 (11th Cir.2005). Accordingly, "once the repeal of an ordinance has caused [the court's] jurisdiction to be questioned, [the plaintiff] bears the burden of presenting affirmative evidence that its challenge is no longer moot." *National II*, 402 F.3d at 1334. And when there is an "absence of evidence

indicating that the government intends to return to its prior legislative scheme, repeal of an allegedly offensive statute moots legal challenges to the validity of that statute." *Id.*

In this case, the City has affirmatively indicated that it has no intention of reinstating its previous ordinance. (D.E. 20–1 ¶ 36) ("[T]he New Ordinance ... will remain a part of the City Code independent of the outcome of this litigation"). In contrast, SFEF has not provided any evidence that the City of Miami has the intention to re-enact the old ordinance. "Mere speculation that the City may return to its previous ways is no substitute for concrete evidence of secret intentions." *National II,* 402 F.3d at 1334. Courts within this circuit have routinely found statements such as the one made by the City sufficient to overcome a bad faith claim. *Lockridge v. City of Oldsmar, Fla.,* 475 F.Supp.2d 1240, 1251 (M.D.Fla.2007), *aff'd on other grounds,* 273 Fed.Appx. 786 (11th Cir. 2008) ("[A] city can establish its intention not to reenact an ordinance by disavowing an intention to do so," and "[d]efendant has asserted that it has no intention of reenacting the former ordinance"); *KH Outdoor, L.L.C. v. Clay County, Fla.,* 410 F.Supp.2d 1160, 1165 (M.D.Fla.2006), *aff'd on other grounds,* 482 F.3d 1299 (11th Cir.2007) ("Here, the County's counsel has stated before this Court on the record that the Old Sign Ordinance will not be reenacted and the County filed an affidavit by its Zoning and Code Enforcement Director stating that the County has 'no intention' of reenacting the Old Sign Ordinance.... The Court may presume that a government official is unlikely to resume allegedly illegal activity."). Because the City has stated that it has no intention of reverting back to the Old Zoning Ordinance, its motivation for changing the law is irrelevant. *National II,* 402 F.3d at 1331 n. 3 ("[S]ince we conclude that the City has no intention of re-enacting the allegedly unconstitutional segments of the zoning code, we need not decide what initially motivated the City's comprehensive overhaul of its entire zoning ordinance."); *Id.* at 1334 ("[Plaintiff] is also incorrect in suggesting that we should focus on the City's motivation in amending the code. The City's purpose in amending the statute is not the central focus of our inquiry nor is it dispositive of our decision. Rather, the most important inquiry is whether we believe the City would re-enact the prior ordinance.").

Moreover, it is immaterial that the City enacted the New Zoning Ordinance after SFEF filed this lawsuit. *See, e.g., Tanner Advertising Group, L.L.C. v. Fayette County, Ga.,* 451 F.3d 777, 780 (11th Cir. 2006) (claims rendered moot even though ordinance was amended on appeal one day after the Eleventh Circuit vacated its panel decision and granted rehearing *en banc*); *National II,* 402 F.3d at 1333 n. 6 (ordinance amended six months after plaintiff filed suit).[9] Accordingly, Eleventh

---

**9.** SFEF cites *Harrell v. The Florida Bar,* 608 F.3d 1241 (11th Cir.2010) in support of its argument that the City's decision to amend its ordinance after SFEF had already filed suit demonstrates bad faith. In *Harrell,* an attorney sued the Florida Bar ("the Bar"), alleging that provisions of the Bar's advertising rules were unconstitutional. *Id.* at 1253. The Bar argued that the attorney's challenges were moot because since the filing of the lawsuit, the Bar had begun permitting the advertisements that were originally disallowed under the allegedly unconstitutional advertising rules. *Id.* at 1265. The Eleventh Circuit was unpersuaded by the Bar's mootness challenge, concluding that because the Bar allowed publication of previously illegal attorney advertisement only after the plaintiff had filed suit, the Bar acted in bad faith. *Id.* at 1267–1268. The facts of *Harrell* can be readily distinguished from those of *National II, Tanner* and this case. *Harrell* involves an entity, the Florida Bar, acting in its executive capacity to make a temporary change to its rules to allow a certain attorney services ad, whereas *National II, Tanner,* and this case

Circuit precedent obviates the need for this Court to consider the role the instant litigation played, if any, in the City's decision to enact the New Zoning Ordinance.

### 3. The alteration of the challenged portions of the old ordinance

■ SFEF argues that the new ordinance does not alter the challenged portions of the old law, thus the new ordinance does not moot the old ordinance. Specifically, SFEF contends that (a) the new ordinance still gives the City Manager unfettered discretion to negotiate the terms of relocation and reconstruction agreements and regulate the permit process, without adequate procedural safeguards, and (b) the new ordinance still fails to protect an important government interest. The City responds by setting forth the ways in which the new ordinance significantly alters the challenged portions of the old ordinance.

■ The constitutional validity of the New Zoning Ordinance is beyond the purview of this lawsuit. Nonetheless, this Court has considered SFEF's arguments insofar as they bear on the issue of mootness and is unpersuaded. Claims related to a superceded law are moot unless the new law leaves the challenged "features of the prior law substantially undisturbed." *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310–11 (11th Cir.2000); *see also Naturist Society, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir.1992) ("[S]uperseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case its not moot."). The New Zoning Ordinance substantially alters the challenged features of the prior law. Without passing on the constitutionality of the new ordinance, the new ordinance contains new procedural safeguards and standards "to guide government officials and limit their discretion." (D.E. 1 ¶¶ 58–60). It sets forth fourteen new requirements that need to be met to receive a permit for relocation and reconstruction of a billboard, which are intended to guide the City Manager in negotiating the terms of the relocation and reconstruction agreements.[10] The alleged challenged portions of the Old Zoning Ordinance no longer appear in the City's code and have been replaced by a new regulatory scheme that is sufficiently distinct from the prior law as to moot SFEF's claims.[11]

involve a legislative body enacting a superceding law impacting city zoning. Accordingly, the Court finds that the holding regarding mootness in *National II* and *Tanner* are more applicable to this case than the holding in *Harrell*.

10. These requirements include, *inter alia,* the following: that the billboards may only be in certain nonresidential areas of the city; that the applicant must satisfy the terms of exchange of existing legal billboards for the City's agreement to issue an amended permit; that the billboards should not be in certain "gateway areas"; that the relocation and reconstruction must be limited to certain zoning districts and shall comply with all technical building codes and regulations, setback requirements, FDOT regulations, and encroach-

ment restrictions; and that the relocation and reconstruction agreements will reduce the number of signs in the neighborhoods and surface streets. *See* § 62–704(a)–(n).

11. On August 18, 2010, after this lawsuit had been pending for several months and after the City passed the New Zoning Ordinance, the parties moved to stay all proceedings until September 30, 2010 pending consideration by the City Commission of a proposed settlement of this lawsuit. SFEF and the City, however, failed to reach a settlement agreement and litigation re-commenced. This settlement agreement, which presumably SFEF took to the City Commission under the New Zoning Ordinance, is not in the record, is not subject to the parties' motions, and is apparently not

#### 4. SFEF's vested right to a permit

■ SFEF contends that its right to a permit vested upon submitting its original settlement proposal under the Old Zoning Ordinance; thus notwithstanding the passage of a New Zoning Ordinance, the Court must determine whether the Old Zoning Ordinance is constitutionally valid. The City argues that SFEF cannot demonstrate any of the elements required for a finding of vested right, which are reliance, *i.e.* equitable estoppel, on the part of SFEF, or bad faith on the part of the City.

A party's vested property right is an enforceable entitlement to a sign permit unaffected by subsequent changes to the sign ordinance, which may keep a constitutional challenge to a repealed sign ordinance from becoming moot. *Coral Springs Street Systems, Inc.*, 371 F.3d 1320, 1333 (11th Cir.2004). No Florida court has ever found a vested right to exist in a sign permit absent either a finding of equitable estoppel or bad faith. *Id.* at 1334.

■ Equitable estoppel may be invoked against a local government when a property owner has made such a change to his position or incurred such obligation and expense in reliance upon the act or omission of the government that it would be unjust or inequitable to destroy the right that he has acquired. *Id.* The Court does not find that SFEF has demonstrated equitable estoppel. SFEF has not shown that it availed itself of all the means available to get authorization of its settlement proposal from the City Commission, nor can it demonstrate that it incurred great expense in reliance on the City. SFEF contracted to purchase the Boardworks Sign over one year before it began settlement negotiations with the City, thus the timing of SFEF's purchase indicates that it could not have possibly relied on the City's actions. (*See* D.E. 1 ¶ 32). Moreover, SFEF did not close on the Boardworks Sign until fifteen days after it claims that the City allegedly rejected its settlement proposal. (*See* D.E. 1 ¶¶ 33, 39). The very fact that SFEF decided to close on the sign even after the City allegedly denied its proposal demonstrates that SFEF did not rely on any acts or omissions of the City.

Florida courts have also recognized a vested right when a municipality has passed a new ordinance in bad faith to prevent the plaintiff from proceeding with his project. *Coral Springs*, 371 F.3d at 1336–37. The Court has already noted that SFEF has not shown that the City acted in bad faith by passing the new ordinance. Accordingly, SFEF has failed to demonstrate both equitable estoppel and bad faith, and thus has failed to persuade the Court that it has a vested right in a permit under the Old Zoning Ordinance that survives the City's mootness challenge.

### V. Conclusion

In sum, none of SFEF's claims are justiciable. SFEF's claims for damages fail on ripeness grounds, because SFEF failed to seek authorization of its settlement agreement from the City Commission, and SFEF's claims for prospective relief are rendered moot by the New Zoning Ordinance. Accordingly, it is hereby

ORDERED AND ADJUDGED that SFEF's Motion for Summary Judgment (D.E. 13) is DENIED, and the City's Motion for Summary Judgment (D.E. 22) is GRANTED. The Court will separately enter Final Summary Judgment.

DONE AND ORDERED.

relevant to the disposition of the pending motions.