[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13934
_____

D.C. Docket No. 1:16-cv-25378-FAM


CLUB MADONNA, INC.,
a Florida corporation d.b.a. Club Madonna,

Plaintiff - Appellant,

versus

CITY OF MIAMI BEACH,
a Florida municipal corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 24, 2019)

Before ED CARNES, Chief Judge, and ROSENBAUM and DUBINA, Circuit Judges.

ROSENBAUM, Circuit Judge:

People often say that timing is everything.  Hitting a home run?  Timing.[1]

Comedy?  Timing.[2]  Winemaking?  Timing.[3]  Relationships?  Timing.[4]  Politics?

Timing.[5]

And of course, timing is also important when it comes to Article III

justiciability.  File before the facts underpinning the claim have been sufficiently

developed, and a court must dismiss the claim because it is not ripe for the court's

review.  But wait until the claim has been resolved and the court can offer no further

relief, and a court must dismiss the claim because it is moot.  Yet if a well-pleaded

claim falls in the sweet spot between ripeness and mootness and is otherwise

justiciable, it states a "case or controversy" that the court must entertain.

---

[1] Babe Ruth said that a great hitter didn't "swing any harder" or "with any longer arc than the poorer hitters" but had "perfect timing sense."  George Herman Ruth, *Babe Ruth's Own Book of Baseball* 178 (University of Nebraska Press, 1992) (1928); *see also* Nate Scott, "The 50 Greatest Yogi Berra Quotes," *USA Today* Sept. 23, 2015, *available at* https://ftw.usatoday.com/2015/09/the-50-greatest-yogi-berra-quotes (last visited May 24, 2019).

[2] According to Bob Hope, timing is "the essence of life and definitely of comedy."  William Robert Faith, *Bob Hope: A Life in Comedy* (Da Capo Press, Inc. 2009).  Asked to comment further, he reportedly paused and said, "We don't have time for that."  Dena Kleiman, "Bob Hope Gives a Lesson in Comedy," *New York Times*, April 30, 1986, *available at* https://nyti.ms/2HLa4Mi.

[3] Timing's importance in winemaking was central to the Paul Masson advertising campaign from the late 1970s, which featured Orson Welles informing the viewer that the company would "sell no wine before its time."  *See Orson Welles for Paul Masson Wine (April 2, 1979)*, YouTube (May 14, 2009), https://youtu.be/oSs6DcA6dFI, (last visited May 24, 2019).

[4] Just ask Mila Kunis and Ashton Kutcher.  They married in 2015, over a decade and a half after their first kiss—as actors in the pilot episode of That '70s Show.  Stephanie Petit, "#TBT: Mila Kunis and Ashton Kutcher First Kissed on *That 70's Show*," *People* (July 21, 2016), https://people.com/tv/mila-kunis-and-ashton-kutcher-recall-first-kiss-on-that-70s-show/    (last visited May 24, 2019).

[5] Pierre Trudeau is credited as saying that timing was the "essential ingredient" of politics. *See The Wordsworth Dictionary of Quotations* 439 (Connie Robertson, ed.,Wordsworth 1997).

2

Here, Appellant Club Madonna, Inc. (the "Club"), a fully-nude strip club in the City of Miami Beach (the "City"), filed several claims against the City, challenging administrative action it had taken against the Club, the laws authorizing that action, and ordinances the City later enacted that regulate the fully nude strip-club business. The district court dismissed all sixteen of the Club's claims, six because they did not state a claim and ten because they were not yet ripe for the court's review.

The Club appealed the district court's dismissal as it pertains to all but Counts I, II, and part of Count VI. We agree that Counts III through VI failed to state claims. We also agree that one of the remaining claims was not ripe. And we affirm the district court's dismissal of one more of those claims because the Club lacks standing to pursue it. But we conclude that the eight remaining appealed claims were ripe for the district court's review and therefore reverse and remand to the district court for further proceedings.

## I.

The catalyst for this case arose out of events occurring on January 6, 2014. On that date, police executed a search warrant at the Club. The affidavit supporting the warrant application described a police investigation into the disappearance of a 13-year-old girl. Among other information, it asserted that the girl had been trafficked by various people, including a woman who herself danced at the Club and

who forced the girl to dance, fully nude, at the Club on several occasions. According to the affidavit, the Club did not require the girl to provide it with identification to verify her age, and the girl did not offer the Club any identification before performing. The affidavit further attested that the woman and her cohorts coerced the girl to turn over to them any money she earned working at the Club, under threat and actions of physical abuse.

On January 10, 2014, the City's city manager found, based on the search warrant, that the conditions at the Club constituted an emergency and immediately suspended the Club's business license.[6] The City scheduled a hearing on that suspension, to be held before a special master on February 5, 2014. Before the hearing, though, the Club and the City reached a compromise under which the Club agreed to institute measures to ensure that similar events would not happen again, and the City agreed to return the Club's business license.

Following these events, the City passed two ordinances regulating nude dance establishments, City of Miami Beach Ordinance Nos. 2015-3917 and 2015-3926 (collectively, the "Ordinance"). The Ordinance remains in effect and contains three sections.

---

[6] Strictly speaking, the City suspended the Club's Business Tax Receipt and its Certificate of Use for the building. The parties and district court variously used the terms "occupational licenses" and "business license" to describe these items. For simplicity, we refer to them collectively simply as the Club's "business license."

4

First, Section 18-913 requires nude dance establishments such as the Club to check the age and work eligibility of "any worker or performer" by requiring that they "provide proof of an original, lawfully issued state or federal photo identification, and one additional form of identification." The owner or manager of the establishment must also "[v]erify the accuracy" of the documents by making a "sworn statement . . . confirming that the individual performer is at least 18 years of age." In the same sworn statement, the owner or manager must "[c]onfirm" that the worker is "performing of her or his own accord, and is not being forced or intimidated into performing or working." Code of the City of Miami Beach § 18-913. Section 18-913 also requires the business to keep a log of workers as they enter and exit the premises and to make all of the required documentation available "for inspection by the city upon demand." *Id.*

Next, under Section 18-914, nude dance establishments must "[p]rovide direct monetary or non-monetary compensation to any worker or performer" and "maintain documentary proof" that the compensation "was directly received by the worker or performer." Code of the City of Miami Beach § 18-914. As with Section 18-913, Section 18-914 requires the business to maintain records of its compliance, and the City enjoys "a right to request and inspect the records for any and all workers or performers." *Id.*

5

Finally, Section 18-915 describes the penalties for failure to comply with the requirements of Sections 18-913 and 18-914. For a first, second, and third offense within specified time periods, a business shall be fined $5,000, $10,000, and $20,000, respectively. For a second offense within three years, the City will shut down the business for three months. And a third offense allows the City to exercise its discretion to close the business for up to a year. Code of the City of Miami Beach § 18-915. An establishment charged with violating the ordinance has a right to an administrative hearing and may appeal the decision to "a court of competent jurisdiction." *Id.*

So far, the City has not alleged that the Club has fallen short of compliance with the Ordinance.

## II.

Displeased with the City's activities after the execution of the search warrant, the Club filed a complaint against the City. The complaint contains multiple and varied constitutional-law claims that might inspire a law-school professor writing a final exam. We catalogue them below.

Counts I through VI all concern the City's actions in response to the execution of the search warrant and challenge laws existing at that time, before the enactment of the new Ordinance. More specifically, Count I presented a facial challenge to the ordinances that authorized the City to close the Club on an emergency basis and

6

asserts that they impose an unlawful prior restraint under the First Amendment; Count II lodges the same argument, only as applied to the Club.  And Count III alleges that these ordinances are facially unconstitutional under the Due Process Clause.  Count IV contests the facial constitutionality of the City's post-deprivation procedures in particular under the Due Process Clause; Count V makes the same argument as applied to the Club.  Count VI asserts that the City's use of the local laws to suspend its business license violated the First Amendment and the Due Process Clause because, according to the complaint, the City acted in bad faith and for retaliatory reasons.

Counts VII through XVI concern the legality of the Ordinance enacted in the wake of the police investigation.  Count VII contends that the Ordinance imposes an unconstitutional burden on the Club's First Amendment rights.  Count VIII alleges that the Ordinance is an unconstitutional tax on speech.  Count IX challenges the Ordinance as a violation of the Equal Protection Clause.  Count X argues that the Ordinance is unconstitutionally vague.  Count XI posits that the Ordinance violates the Contract Clause.  Count XII takes issue with the penalty provision, claiming it violates the Eighth Amendment.  Counts XIII, XIV, and XV allege that the Ordinance is preempted by state and federal laws.  And finally, Count XVI contends that the inspection provision of the Ordinance violates the Fourth Amendment.

In response to the Club's complaint, the City moved to dismiss the case. To support its motion, the City attached the search warrant (complete with the supporting search-warrant affidavit) that prompted its actions, the order suspending the Club's business license, and the order offering to reinstate the Club's business license under a negotiated compromise.

As for its legal argument, the City asserted that the complaint should be dismissed because the Club lacked standing to bring any of its claims. Besides that, the City continued, Counts I through VI were moot, and Counts VII through XVI were not ripe for the court's review. In the alternative, the City argued that the Club failed to state any claim.

In response, the Club contended that its claims were justiciable and viable.

The district court granted the City's motion to dismiss. It reasoned that Counts I through VI were justiciable but did not state claims. Specifically, as to Counts I, II, and VI of the complaint, the court said that the Ordinance satisfied *United States v. O'Brien*'s, 391 U.S. 367 (1968), test for content-neutral laws that incidentally regulate expressive conduct and thus did not violate the Club's First Amendment rights.[7] As for Counts III-VI of the complaint, the court noted that the Club had not contested the City's suspension of its business license at the scheduled

---

[7] The Club does not appeal the district court's dismissal of Counts I and II, nor the dismissal of Count VI to the extent it asserts a violation of the First Amendment. As a result, we do not address those claims.

8

administrative hearing and had not availed itself of the other process available to it under state and local law.  Therefore, the court concluded, those due-process counts were "incognizable" under *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc).

Next, the Court reasoned that Counts VII through XVI were not ripe for the court's review.  Specifically, the court observed that "the Club ha[d] not been charged with violating" the Ordinance.  "Without the facts of a particular violation," the court explained, it could "only speculate as to whether the Club will be charged under the ordinances and if so, whether it will be subject to specific penalties."  On that basis, the district court concluded that "the Club ha[d] not satisfied the 'fitness' prong of the ripeness inquiry."  In addition, the district court determined that the Club would not suffer a substantial hardship as a result of postponing adjudication because the law did not "prohibit the Club from providing fully nude dance entertainment to its adult patrons."

This appeal followed.

## III.

We review *de novo* the grant of a motion to dismiss for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 856 F.3d 1338, 1339 (11th Cir. 2017).  We likewise review *de novo* questions

concerning our subject matter jurisdiction, including standing and ripeness. *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006). And we can affirm on any basis supported by the record, regardless of whether the district court decided the case on that basis. *Jarvela v. Crete Carrier Corp.*, 776 F.3d 822, 828 (11th Cir. 2015).

## IV.

After careful consideration of the record and oral argument, we affirm in part and reverse and remand in part. We agree with the district court that Counts III through VI (the due-process part of that claim)[8] of the Club's complaint failed to state claims. We also agree that Count XII was not ripe for the court's review. And we affirm the dismissal of Count X because the Club lacked standing. We conclude, however, that the remaining counts are ripe for the court's review, so we reverse the court's order on those counts and remand the case for further proceedings.

## A.

We begin with Counts III-VI of the Club's complaint. As we have noted, the district court dismissed these counts for failure to state a claim, citing *McKinney*. We agree.

To state a claim under 42 U.S.C § 1983, a plaintiff must allege facts showing that the defendant, acting under color of state law, deprived it of a right protected by the Constitution or by a federal statute. Where, as here, the plaintiff alleges a

---

[8] *See supra* at n.7.

violation of procedural due process, the plaintiff must show the deprivation of that protected interest "*without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 123 (1990) (emphasis in original). And a violation of procedural due process does not "become complete 'unless and until the state refuses to provide due process.'" *McKinney*, 20 F.3d at 1562 (quoting *Zinermon*, 494 U.S. at 123). Here, all of the Club's due-process claims in Counts III-VI fail for the same reason: they all lack the essential element that the state refused to provide the Club with due process.

First, the Club was not entitled to a pre-suspension hearing. Though *Mathews v. Eldridge*, 424 U.S. 319 (1976), can require pre-deprivation process, that is not always the case. Among other such circumstances, the Supreme Court has determined that pre-deprivation process is not required when a need for "quick action" exists. *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (citation and quotation marks omitted). As we have noted, here, law enforcement had probable cause to believe that the Club had allowed a 13-year-old trafficked girl to perform under threat and act of physical abuse. These circumstances raised immediate and pressing concerns for the physical and mental health and welfare of minors. So the City reasonably concluded that there was a need for "quick action," and no pre-deprivation process was required.

We therefore turn to the post-deprivation process the Club received. Upon the City's decision to suspend its business license, the Club was entitled to a hearing

11

on an emergency basis before a special master to challenge that decision. Code of the City of Miami Beach §§ 14-406(b); 102-383. At the conclusion of that hearing, the special master would have issued a final administrative order. Code of the City of Miami Beach §§ 14-408(c); 102-385(c). Then, the Club would have been entitled to appeal that order to the Florida State Circuit Court. Fla. Stat. Ann. § 162.11; *see also* Fla Stat. Ann. § 162.03 (providing that special masters with enforcement authority have the "same status" as enforcement boards for purposes of Fla. Stat. Ann. § 162); Code of the City of Miami Beach §§ 30-2, 30-77 (stating that the City has given special masters enforcement authority and that the special masters' decisions are appealable to the circuit court under Fla. Stat. Ann. § 162.11).

As we have previously held, that procedure satisfies due process because the Florida Circuit Court has the power to remedy any procedural deficiencies and cure violations of due process. *McKinney*, 20 F.3d at 1564.

Here, the Club did not avail itself of the processes provided by local and state law. Instead of presenting its arguments to the special master and Florida Circuit Court, the Club brought its arguments to federal court. For that reason, we cannot say that the City or state refused to provide the Club with due process. The district

12

court was therefore correct to dismiss Counts III-VI of the Club's complaint for failure to state a claim.[9]

**B.**

The district court dismissed Counts VII-XVI on the basis that they were not ripe for review. Specifically, the court reasoned that the Club "ha[d] not been charged with violating" the Ordinance and that the Club would not suffer a substantial hardship as a result of postponing adjudication of its claims, so the Club's claims were not ripe for review. We respectfully disagree.

Article III limits the power of the federal courts to "cases" and "controversies." U.S. Const. art III, § 2; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). One of the "landmarks" of that requirement is the doctrine of standing, which requires that a party have suffered an "injury in fact," that the party's injury is fairly traceable to the challenged action of the defendant, and that the injury would "likely" be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61.

But even when a claim meets the case-or-controversy requirement's constitutional demands, such as standing, we also recognize important prudential

---

[9] Because we hold that the district court's dismissal of Counts III-VI of the complaint was proper under *McKinney*, we need not determine whether the district court appropriately relied on the documents attached to the City's motion to dismiss. Those documents are not relevant to the *McKinney* issue. The search-warrant affidavit is the only one of the attached documents that we have considered in this appeal, and we considered it only for purposes of recounting the background facts of the case. We may take notice of that document because its authenticity is not in question and it is central to the claims at issue. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

limitations on the kinds of cases that a court has power to decide. *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1338-39 (11th Cir. 2005). Those prudential concerns "counsel judicial restraint" and prevent courts from "rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." *Id.* at 1339. Based on these interests, courts decide only cases that are ripe for their review. We determine ripeness, which addresses both constitutional and prudential concerns, by evaluating "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Advert. Co.*, 402 F.3d at 1339 (citing *Abbott Lab. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Concerning fitness for judicial decision, we ask whether the parties raise an issue that we can decide without further factual development and whether the institutional interests of the court and agency favor immediate review. *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1258 (11th Cir. 2010); *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995). As for "hardship," litigants must show that they are "forced to choose between foregoing lawful activity and risking substantial legal sanctions." *Cheffer*, 55 F.3d at 1524 (citing *Steffel v. Thompson*, 415 U.S. 452, 462 (1974)); *see also Elend*, 471 F.3d at 1211. If a claim is fit for judicial decision, that is end of the inquiry, and the matter is ripe, given that the absence of a "hardship" "cannot tip the

14

balance against judicial review" under those circumstances. *See Harrell*, 608 F.3d at 1259 (citation and internal quotation marks omitted).

We assess ripeness on a claim-by-claim basis. A facial challenge presenting a purely legal argument, for example, "is presumptively ripe for judicial review" because that type of argument does not rely on a developed factual record. *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009). In contrast, an as-applied challenge "necessarily requires the development of a factual record for the court to consider." *Id.*

Applying these principles here, we conclude that Counts VII, VIII, IX, XI, XIII, XIV, XV, and XVI of the Club's complaint are ripe for review. To begin with, Counts XIII, XIV, and XV assert that the Ordinance was preempted by state and federal law. Further factual development cannot assist in resolution of these facial challenges, which raise purely legal issues. Nor do any institutional concerns of the court or the City render the issues unfit for review. Consequently, these claims are ripe. *Id.* at 1308.

Next, the Club's as-applied challenges—asserting an unconstitutional burden and tax on speech (Counts VII and VIII), an Equal Protection violation (Count IX), and a Contract Clause violation (Count XI)—require no more factual development to be ripe for review. It is undisputed that the Club is subject to the Ordinance and

15

is complying with its regulations.  And that compliance is what forms the factual basis of the Club's as-applied arguments.

To be sure, the Club does not contend that it was charged with violating the Ordinance or that it has suffered the Ordinance's penalties.  But that does not render the claims in Counts VII, VIII, IX and XI unripe for the district court's review.  If the Club were to fall short of any of the Ordinance's requirements and the City were to charge it with a violation of the law, the resulting additional facts would shed no further light on whether *compliance* with the Ordinance is an unconstitutional burden on speech, a tax on speech, an equal-protection violation, or a Contract Clause violation in the first place.  For these same reasons, institutional concerns likewise present no impediment to fitness for review.  So Counts VII, VIII, IX, and XI are ripe for review.  *See Harrell*, 608 F.3d at 1258; *Cheffer*, 55 F.3d at 1524.

Count XVI is also fit for review.  The Club claims that the Ordinance authorizes the City to engage in warrantless searches in violation of the Fourth Amendment.  That claim presents purely legal questions, such as (1) whether the Ordinance falls within the administrative-search exception, and if so, whether it affords the Club an opportunity to obtain pre-compliance review before a neutral decisionmaker, and (2) whether the Club is part of a "closely regulated" industry, and if so, whether warrantless inspections are necessary to further a substantial government interest and whether the Ordinance adequately constrains police

16

discretion. *See City of Los Angeles v. Patel*, 135 S. Ct. 2243, 2452–56 (2015). As a result, we need not wait for further facts, such as a warrantless search under the Ordinance, to occur to resolve this claim.

As for Count XII, we agree with the district court that it is not ripe for review. Count XII alleges that that the Ordinance's penalty provision violates the Eighth Amendment. But we have held that "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." *Cheffer*, 55 F.3d at 1523-24. The Club does not allege that the City imposed a fine under that provision or that the imposition of a fine is immediately forthcoming, so the district court correctly determined that the Club's Eighth Amendment argument is not ripe for review.

## C.

Finally, we turn to Count X, which alleges that the Ordinance is unconstitutionally vague. The district court dismissed that claim as unripe, but we affirm for a different reason: the Club lacked standing to bring it.[10]

As we have noted, to have standing, a party must demonstrate that (1) it has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the operation of the challenged law; and (3) a favorable judgment is likely to

---

[10] Standing is a jurisdictional requirement that we are obligated to address *sua sponte*. *See Murphy v. Dulay*, 768 F.3d 1360, 1366 n.4 (11th Cir. 2014); *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806-807 (11th Cir. 1993).

redress the injury. *Wollschlaeger v. Governor*, 848 F.3d 1293, 1303-1304 (11th Cir. 2017) (en banc); *Harrell*, 608 F.3d at 1254. Though we "most loosely" apply the injury-in-fact requirement when a claim involves First Amendment rights, we nevertheless conclude that the Club lacked standing to argue that the Ordinance is unconstitutionally vague. Even if the Club could show that it had suffered, or will imminently suffer, an injury in fact, it cannot demonstrate that the injury is fairly traceable to the Ordinance's purported imprecision.

In the first step of our standing analysis, we ask whether the Club has suffered, or imminently will suffer, an injury in fact. We have previously held that a party might satisfy this prong by showing self-censorship. *See Wollschlaeger*, 848 F.3d at 1304-1305; *Harrell*, 608 F.3d at 1253. Here, though, it is undisputed that the Club is not self-censoring, but rather, is continuing to carry on its business, apparently in compliance with the Ordinance.

The Club might also suggest that the Ordinance contains vague language that causes it to fear that the City will enforce it arbitrarily, and is thereby injured. But mere fear of unconstitutional action alone on the part of the City is too speculative an injury to confer standing to the Club. *See JW v. Birmingham Bd. Of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018); *31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003). That is especially true here, since the Club has apparently been

18

successfully complying with the Ordinance without incident since it was promulgated roughly three years ago.

The Club's most promising standing argument would be that it unnecessarily incurred additional expenses in an effort to comply with what it says is an unconstitutionally vague law, above and beyond the expense that would have been necessary to comply with a law that was not vague. The Club suggested that argument in its pleadings and briefs to this Court. Assuming that the Club is making that argument, and assuming that such an injury could help confer standing in a pre-enforcement vagueness challenge, the Club would also need to demonstrate that the additional expense incurred was fairly traceable to the alleged deficiencies in the challenged provisions. Just as in *Harrell*, where the injury was self-censorship, the Club would have to establish that its injury was fairly traceable to the purportedly vague provisions by showing that those provisions were "at least arguably vague" as applied to it. 608 F.3d at 1254.

In other words, our standing analysis requires us to take a "peek" at the merits of the Club's vagueness claim. *See Transp. Workers Union of Am., AFL-CIO v. Transp. Sec. Admin.*, 492 F.3d 471, 475 (D.C. Cir. 2007). Of course, while "standing in no way depends on the merits" of a plaintiff's claim, "it often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). As we recently observed, we "'must not confuse weakness on the merits with absence

19

of Article III standing.'" *Moody v. Holman*, 887 F.3d 1281, 1285 (11th Cir. 2018) (quoting *Ariz. St. Leg. v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015)).  In some circumstances, however, those "'distinct concepts can be difficult to keep separate.'"  *Id.* (quoting *Bond v. United States*, 564 U.S. 211, 218 (2011)).

Here, the "nature and source" of the Club's claim requires us to ask whether the Ordinance's challenged provisions are "at least arguably vague" as applied to it. *Harrell*, 608 F.3d at 1254.  The answer to that question will allow us to assess whether the Club's apparent injury—the expense above and beyond that necessary to comply with a clear law—is "fairly traceable" to the Ordinance's vagueness and, accordingly, whether the Club has standing to bring Count X of its complaint.

But here, none of the challenged provisions are "at least arguably vague" as applied to the Club.  As a result, the Club cannot show that a financial injury was fairly traceable to language it characterizes as "vague."

First, the Club contends that the provision requiring employees to present a "lawfully issued state or federal photo identification" and "one additional form of identification" is vague.  We disagree;  it is not arguable that "people of ordinary intelligence" would fail to understand what the Ordinance requires.  *See Hill v. Colorado*, 530 U.S. 703, 732 (2000).  The plain language of that provision unambiguously requires employees to provide two legal forms of identification

20

issued by a state or federal government, that show the employee's age and work eligibility.

The Ordinance's requirements that the Club "verify the accuracy" of those documents and "confirm that the person is working or performing of his or her own accord and not being forced or intimidated into working or performing" are not arguably vague, either. In fact, the Ordinance specifically instructs the Club as to how it must execute these requirements: "by preparing and retaining a sworn statement from the owner or manager" confirming that the employee is of age and is not being forced or intimidated into working. By its language, the Ordinance simply requires the Club manager or owner to verify the accuracy of the documents and the employee's willingness to work to the verifying official's good-faith satisfaction, so the verifying official is comfortable swearing to those circumstances. We find nothing arguably vague about this aspect of the Ordinance as applied to the Club.

Next, the Club suggests that the provision of the Ordinance that requires that "no person shall be allowed to enter" the establishment if the manager has not "verified" the person to be of age, work-eligible, and not working because of force or intimidation is vague because it could apply to patrons as well as employees. We are not persuaded. This provision clearly refers to employees and not to patrons. After all, even to the extent that the Ordinance's language is unclear in the least, the

21

title of the section makes it obvious that the requirement applies to "workers and performers." *Essex Ins. Co. v. Zota*, 466 F.3d 981, 989-90 (11th Cir. 2006).

Finally, the Ordinance's penalty provision stating that the city manager "may" revoke the Club's business license for up to one year is not arguably vague. The provision specifies with "sufficient clarity" what the enhanced penalty is. *See Beckles v. United States*, 137 S. Ct. 886, 892 (2017). And although the provision gives the city manager considerable discretion to determine when, and to what extent, to impose that penalty, the sort of discretion conferred here does not render the provision unconstitutionally vague. *See id.* at 893 ("[O]ur cases have never suggested that a defendant can successfully challenge as vague a sentencing statute conferring discretion to select an appropriate sentence from within a statutory range, even when that discretion is unfettered.").

In short, the Club cannot clear the low bar of demonstrating that the challenged provisions are at least arguably vague as applied to it. So even if it showed that it had incurred some additional expense in an attempt to comply with those provisions, and assuming that the additional expense constituted an injury for purposes of standing, that injury would not be fairly traceable to the purportedly vague language. And without an injury that is fairly traceable to the challenged provisions, the Club lacks standing to argue that they are unconstitutionally vague. We therefore affirm the district court's dismissal of Count X.

22

**D.**

In sum, Counts VII-IX, XI, and XIII-XVI of the Club's complaint are ripe for review, so we reverse the district court's order and remand the case for further proceedings on those counts.  Count XII of the complaint is not ripe, and the Club lacks standing to argue in Count X that the Ordinance is unconstitutionally vague, so we affirm the district court's order dismissing those counts.

**V.**

For these reasons, we affirm the dismissal of Counts III-VI, X, and XII of the Club's complaint.  But we reverse the dismissal of Counts VII-IX, XI, and XIII-XVI of that complaint and remand the case to the district court for further proceedings.

**AFFIRMED IN PART and REVERSED AND REMANDED IN PART.**

23